Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| MUNICIPIO DE YAUCO<br>Parte Recurrida<br><br>v.<br><br>CARLOS SEPÚLVEDA MILLAN t/c/c CARLOS SEPÚLVEDA Y OTROS<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE, RURAL DEVELOPMENT**<br>**Parte Peticionaria** | TA2025CE00061 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Civil Núm.: PO2021CV02035<br><br>Sobre: Expropiación Forzosa |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de agosto de 2025.

Comparece la parte interventora, United States Department of Agriculture, Rural Development (USDA-RD) mediante petición de *certiorari* instada el 30 de junio de 2025. Solicita que revoquemos la *Resolución* dictada y notificada el 2 de junio de 2025, por el Tribunal de Primera Instancia (TPI), Sala Superior de Ponce. Mediante el referido dictamen, el TPI reiteró su determinación de 24 de abril de 2025, que denegó a la USDA-RD su solicitud de desembolso de los fondos consignados como justa compensación del terreno expropiado para cubrir su acreencia hipotecaria.

Examinado el recurso, y a tenor con los criterios (A), (B) y (E) de la Regla 40 de nuestro Reglamento[1], expedimos el auto de *certiorari* y revocamos la resolución post-sentencia recurrida.

---

[1] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

**I.**

El 30 de agosto de 2021, el Municipio de Yauco, representado por su Alcalde, Hon. Ángel Luis Torres Ortiz, presentó la petición de expropiación forzosa de epígrafe, para la adquisición de un predio de terreno con estructura residencial ubicado en la dirección descrita en la solicitud.[2] Conforme la certificación registral que acompañó la petición, la titularidad del inmueble objeto de la acción recae en el señor Carlos Juan Sepúlveda Millán, su esposa Milagros Antonia Rosado Martínez y la sociedad legal de gananciales compuesta por ambos (dueños de la propiedad). Surge, además, que los dueños de la propiedad gravaron el inmueble con una hipoteca en garantía de un pagaré a favor de los Estados Unidos de América, actuando por conducto de la Administración de Hogares del Departamento de Agricultura, por la suma principal de $46,706.00.[3]

El Centro de Recaudación de Ingresos Municipales (CRIM) contestó la demanda el 2 de febrero de 2022, indicando que, en ese momento, la propiedad tenía una deuda contributiva de $12,823.23.[4] El 5 de marzo de 2022, el Municipio de Yauco informó no tener objeción a la solicitud de pago del CRIM.[5]

En cuanto a los dueños de la propiedad, el TPI dio por cumplidos los requisitos del emplazamiento por edictos y el 1 de febrero de 2023, dictó resolución anotándole la rebeldía.[6]

El 28 de septiembre de 2023, se celebró la vista en rebeldía. Compareció el Municipio de Yauco. Los dueños de la propiedad no comparecieron. Conforme surge de la minuta de la vista, el TPI realizó el recuento procesal del caso e indicó que dictaría sentencia una vez se presentara la certificación registral actualizada.[7]

---

[2] Sistema Unificado de Manejo y Administración de Casos (SUMAC), expediente judicial del caso PO2021CV02035, Entrada 1.
[3] *Íd.*
[4] *Íd.,* Entrada 23.
[5] *Íd.,* Entrada 27.
[6] *Íd.*, Entrada 41.
[7] *Íd.*, Entrada 54.

Presentada la certificación registral, el 8 de octubre de 2023, el Municipio de Yauco presentó una moción para que el foro primario dictara sentencia conforme a las alegaciones de la demanda.

El 20 de diciembre de 2023, notificada por edicto el 21 de diciembre de 2023, el TPI dictó *Sentencia* por las alegaciones y, de tal forma, declaró con lugar la petición de expropiación del Municipio de Yauco, invistiéndolo con el título en pleno dominio sobre el inmueble objeto del procedimiento. A su vez, el TPI realizó ciertos pronunciamientos para la eliminación del estorbo público, En lo pertinente a la controversia ante nuestra consideración, expresó el tribunal que:

> [e]l derecho a una justa compensación por el título expropiado del predio de terreno, computado en la suma de $42,000.00, allanándose las partes con interés, luego de descontarse el pago adeudado en contribuciones al Centro de Recaudación de Ingresos Municipales (CRIM) por $12,823.23, queda investido en las personas naturales o jurídicas que tienen derecho a la misma, quedando un balance de la justa compensación ascendente a la suma de $29,176.77.[8]

La Unidad de Cuentas del TPI expidió el cheque a nombre del CRIM por la cantidad de $12,823.23 conforme dictaminado mediante orden del 16 de febrero de 2024.[9]

Así las cosas, el 8 de abril de 2025, USDA-RD presentó una *Moción en Solicitud de Retiro de Fondos*.[10] En ella, alegó ser acreedor hipotecario con un gravamen debidamente inscrito sobre la finca objeto del proceso de expropiación, siendo el tenedor del pagaré original y, por ende, parte con derecho a exigir el pago de la acreencia insatisfecha. A tales efectos, solicitó que se adjudicara a su favor la cantidad consignada de $29,176.77.

---

[8] *Íd.*, Entrada 57.
[9] *Íd.,* Entradas 66-68
[10] *Íd.,* Entrada 69.

El 11 de abril de 2025, notificada el 14 de abril de 2025, el TPI emitió *Orden* autorizando el retiro de fondos a favor de USDA-RD, por la cantidad consignada de $29,176.77.[11]

No obstante, el 24 de abril de 2025, el TPI emitió y notificó una *Resolución Reconsiderando Orden de Retiro de Fondos*.[12] En ésta, expuso que "[r]eevalu[ó] la solicitud [de] retiro de fondos hecha por el USDA en su moción" y determinó que:

> Aun cuando el USDA, <u>alega ser el acreedor hipotecario</u> de Milagros Rosado Martínez, Carlos Sepúlveda Millán t/c/c Carlos Sepúlveda y la sociedad legal de gananciales compuesta por ambos, <u>y presentó un estudio de título a estos efectos</u>, la USDA **no es parte en el presente caso, ni tampoco están reconocidas en la Sentencia las razones que esta Agencia dio en su moción para su solicitud de retiro de fondos**.
>
> Por lo que, este Tribunal, se **Reconsidera** y (1) <u>deja sin efecto la Orden emitida el 11 de abril de 2025</u> (*entradas 71 y 72*), (2) declara **No Ha Lugar** la "**Moción en Solicitud de Retiro de Fondos**" (*entrada 69*) y, (3) por consiguiente, deja sin efecto la autorización de retiro de fondos a favor de la USDA-RD. (Negrillas, subrayado y cursivas en el original).[13]

El 2 de mayo de 2025, USDA-RD presentó una *Moción Uniéndonos a la Representación Legal y en Solicitud de Reconsideración*.[14] Alegó que, como acreedor hipotecario, es una parte con interés a quien la *Ley General de Expropiación Forzosa*, en su sección 5, 32 LPRA sec. 2906, le otorga el derecho a intervenir en tales procedimientos y alegar su derecho de igual modo que si su nombre figurase en la demanda. En esa línea, arguyó que, siendo el acreedor hipotecario, tiene derecho a la justa compensación consignada. Añadió que el derecho como acreedor a reclamar el pago de la justa compensación surgía, además, la escritura de hipoteca inscrita sobre la finca expropiada, que incluyó una cláusula similar a tales efectos.

---

[11] *Íd.,* Entrada 71.
[12] *Íd.,* Entrada 74.
[13] *Íd.*
[14] *Íd.,* Entrada 77.

El 8 de mayo de 2025, notificada el 9 de mayo de 2025, el TPI dictó la orden que se transcribe a continuación:

> Enterado. Atendida la "MOCIÓN UNIÉNDONOS A LA REPRESENTACIÓN LEGAL Y EN SOLICITUD DE RECONSIDERACIÓN" de la United States Department of Agriculture, Rural Development (USDA-RD), ***se ordena al Municipio de Yauco y al Centro de Recaudación de Ingresos Municipales (CRIM) que en el término de 5 días expongan su posición a lo solicitado por la USDA-RD***. (Negrillas, subrayado y cursivas en el original).[15]

Transcurrido el término concedido, USDA-RD presentó una *Moción Informativa* el 21 de mayo de 2025, en la que indicó que el Municipio de Yauco y el CRIM no habían presentado sus respectivos escritos en oposición a la solicitud de reconsideración y reiteró su petición para que se autorizara el retiro de los fondos consignados a su favor.[16]

Ese mismo día, notificada el 22 de mayo de 2025, el TPI dictó una *Segunda Orden al Municipio de Yauco y CRIM (Entrada 79)*, en la que expresó lo siguiente:

> Enterado. Atendida la "MOCION INFORMATIVA", del United States Department of Agriculture, Rural Development, **se ordena al Municipio de Yauco y al CRIM que en el término de 5 días so pena de sanciones económicas a las representaciones legales**:
>
> 1. Cumplan con la orden emitida el 8 de mayo de 2025, notificada el 9 de mayo de 2025, donde se le ordenó que en el término de 5 días expusieran su posición a la "MOCIÓN UNIÉNDONOS A LA REPRESENTACIÓN LEGAL Y EN SOLICITUD DE RECONSIDERACIÓN" de la United States Department of Agriculture, Rural Development (USDA-RD) (Entrada 78).
>
> (Entrada 79). (Negrillas y subrayado en el original).[17]

El 23 de mayo de 2025, el CRIM presentó *Moción en Cumplimiento de Órdenes*. Indicó que no tenía objeción a la petición de USDA-RD.[18]

---

[15] *Íd.,* Entrada 78.
[16] *Íd.,* Entrada 79.
[17] *Íd.,* Entrada 80.
[18] *Íd.,* Entrada 81.

El 30 de mayo de 2025, el USDA-RD compareció mediante otra *Moción Informativa* indicando que a pesar de que la referida orden le fue debidamente notificada, el Municipio de Yauco no presentó su oposición dentro del segundo término concedido. De tal forma, una vez más, el USDA-RD reafirmó su solicitud de reconsideración a la orden dictada el 24 de abril de 2025, con el fin de que se autorizara el retiro a su favor de los fondos consignados en el caso.[19]

El 2 de junio de 2025, el TPI emitió y notificó la *Resolución* mediante la cual declaró no ha lugar a la solicitud de reconsideración de USDA-RD y sostuvo su decisión de denegar el retiro de fondos a favor de la agencia. En esta ocasión, el TPI expresó, en lo pertinente, que:

> … **la USDA-RD no es parte en el presente caso, ni tampoco están reconocidos en la Sentencia las razones que esta Agencia dio en su moción para su solicitud de retiro de fondos**.
>
> En el presente caso, conforme a derecho lo que procede sería que USDA-RD, presente una acción ordinaria contra los deudores hipotecarios y las partes indispensables en dicha acción, para la ejecución de su acreencia hipotecaria en el foro y sala correspondie[nte], conforme a derecho y a la normativa jurisprudencial vigente.[20]

El 13 de junio de 2025, la USDA-RD compareció nuevamente ante el TPI mediante una *Moción Urgente de Reconsideración*. En ésta, reconoció que las Reglas de Procedimiento Civil no proveen para una segunda solicitud de reconsideración. Sin embargo, justificó la presentación de la moción en que en la última resolución el tribunal expuso fundamentos nuevos para sustentar la denegatoria del retiro de fondos a favor de USDA-RD. Así, en el escrito, USDA-RD argumentó que la propia *Ley General de Expropiación Forzosa* establece que los gravámenes sobre una

---

[19] *Íd.,* Entrada 83.
[20] *Íd.,* Entrada 84.

propiedad expropiada quedan cancelados, razón por la cual no tiene una causa de acción de ejecución de hipoteca a su favor.[21]

El mismo 13 de junio de 2025, el TPI dictó *Resolución (Entrada 85)* mediante la cual denegó la *Moción Urgente de Reconsideración.*[22]

Inconforme, el 30 de junio de 2025 la USDA-RD incoó el presente recurso y apuntó el siguiente señalamiento de error:

> ERRÓ EL FORO DE INSTANCIA AL DENEGAR EL RETIRO DE FONDOS A FAVOR DE USDA-RD, SEGÚN LE FUERE SOLICITADO, EN CONTRAVENCION AL DERECHO APLICABLE.

En atención al recurso, el 9 de julio de 2025, concedimos al Municipio de Yauco y los dueños de la propiedad término para que presentaran sus respectivas posturas. A pesar del término concedido, ninguno compareció ante nos.

**II.**

La expropiación forzosa constituye el poder soberano que reside en el Estado para adquirir el dominio de una propiedad sita dentro de sus límites territoriales. *Adm. Terrenos v. Corp. Pesquera Henares,* 201 DPR 14, 21 (2018). De este modo, el Estado está legitimado para hacerse de un bien privado y destinarlo a fines públicos, ello como resultado de su poder inherente para establecer restricciones sobre la propiedad. *Mun. de Guaynabo v. Adquisición M²*, 180 DPR 206, 216 (2010); *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 425 (2008); *E.L.A. v. Registrador*, 111 DPR 117, 119 (1981). De ahí que la facultad de expropiación forzosa ha sido reconocida como una de superior jerarquía, posicionándose sobre los derechos propietarios de los ciudadanos. *Adm. Terrenos v. Corp. Pesquera Henares,* supra; *ACT v. 780.614M²*, 165 DPR 121, 130 (2005); *ELA v. Registrador*, supra.

---

[21] *Íd.,* Entrada 85.
[22] *Íd.,* Entrada 86.

Ahora bien, el mecanismo de expropiación forzosa tiene límites constitucionales que protegen contra actuaciones abusivas o arbitrarias del Estado. *Adm. Terrenos v. Corp. Pesquera Henares*, supra; *Mun. de Guaynabo v. Adquisición M²*, supra, pág. 229. Con relación a ello, la Constitución del Estado Libre Asociado de Puerto Rico dispone que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, sec. 9, Const. ELA, 1 LPRA, Tomo 1*; López y otros v. A.E.E.*, 151 DPR 701, 706 (2000). Como resultado, las únicas limitaciones que pueden reconocerse a esta facultad estatal son que la propiedad se dedique a un uso o fin público y se le satisfaga al demandado una justa compensación por ella. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* supra, pág. 425.

La *Ley General de Expropiación Forzosa*, Ley de 12 de marzo de 1903, según enmendada, 32 LPRA sec. 2901 *et seq.,* expresamente preceptúa que la demanda se insta en contra de los dueños de la propiedad, sus ocupantes y todas las demás personas con derecho o interés sobre la propiedad; o contra la propiedad en sí. *ACT v. 780.614M²,* supra, pág. 130. Específicamente, en su Sección 5, provee como sigue:

> Todas las personas que ocuparen cualquiera de las propiedades descritas en la demanda, que **tuvieren o pretendieren tener cualquier interés en la misma** o en los daños y perjuicios ocasionados por la expropiación, aunque no se les mencionare en ella, **podrán comparecer y alegar su derecho**, cada una por lo que respecta al dominio o interés que en la propiedad tuviere o reclamare, **de igual modo que si su nombre figurase en la demanda**.

> (Énfasis suplido). 32 LPRA sec. 2906.

De manera análoga, la Regla 58.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 58.3(b), reconoce que la parte demandante en una petición de expropiación forzosa, al momento de presentar el pleito correspondiente, solamente tendrá que acumular como partes

demandadas aquellas personas que tengan o reclamen un derecho en la propiedad cuyos nombres a la sazón se conozcan. Además, previo a la celebración de cualquier vista para determinar la compensación a pagarse por la misma, la parte demandante:

> … tendrá que acumular como partes demandadas a todas las personas que tengan o reclamen un derecho [en la propiedad a expropiarse], incluyendo los(las) dueños(as), ocupantes, arrendatarios(as), usufructuarios(as), y acreedores(as) hipotecarios(as), cuyos nombres puedan ser conocidos mediante diligencia razonable en el Registro de la Propiedad o cuyo interés pueda identificarse mediante visitas a la propiedad o de algún otro modo, tomando en consideración la naturaleza y el valor de los bienes que han de adquirirse.

*Íd.,* (Énfasis suplido).

La notificación a la parte con interés es para propósitos de que ésta pueda recuperar del fondo de compensación la porción correspondiente al interés que tenga sobre el bien expropiado. *ACT v. 780.614 M²,* supra.

Presentada la declaración de adquisición y consignado el importe estimado como justa compensación, el gobierno es investido del título sobre la propiedad. El título que adquiere no se deriva del dueño anterior, sino que es un título nuevo, independiente y absoluto, que dimana de la facultad del soberano. El ejercicio del poder de expropiación forzosa extingue todos los derechos anteriores sobre la propiedad. *Íd.,* pág. 131.

Por lo anterior, la inscripción que se haga del dominio a favor del Estado se hará libre de todo gravamen. Los gravámenes que afectan la propiedad, previo a su expropiación, se transfieren al fondo estimado para justa compensación, el cual sustituye al inmueble en lo que respecta a las reclamaciones del anterior dueño y de los acreedores, y a dicha indemnización se extiende a la hipoteca. *Íd.*; *E.L.A. v. Registrador,* supra, pág. 120.

Así pues, los derechos del acreedor hipotecario en un proceso de expropiación forzosa no están desprovistos de protección, pues,

al extinguirse las cargas que pesan sobre el inmueble, éstas se convierten en un derecho sobre el fondo de compensación, es decir, sobre el justo precio. *ACT v. 780.614 M²,* supra, pág. 135. Por tanto, el acreedor hipotecario puede satisfacer del fondo de justa compensación la pérdida de su garantía, luego de la expropiación. *Íd.,* pág. 137. Si el fondo resulta insuficiente para satisfacer la totalidad del crédito, el acreedor tiene derecho a reclamar el balance de su acreencia a través de los procedimientos legales correspondientes. *Íd.,* pág. 136.

### III.

En el presente caso, el TPI denegó el retiro de los fondos consignados a USDA-RD. Dicha denegatoria fue contraria a derecho.

Según citado, si una parte que alega tener algún interés sobre el inmueble expropiado no es incluida en el procedimiento, la Ley General de Expropiación Forzosa, en su sección 5, *supra*, le otorga el derecho a comparecer y alegar su interés en la propiedad, de igual modo que si su nombre figurase en la demanda.

Conforme se desprende de la certificación registral de la propiedad expropiada, USDA-RD es acreedor hipotecario del inmueble. Ciertamente, éste no figuró como parte en el pleito; sin embargo, no debió existir ningún reparo en permitir que compareciera y reclamara su derecho. Esto porque como acreedor hipotecario se le reconoce el derecho a comparecer al pleito y alegar su interés en la propiedad, de igual modo que si su nombre figurase en la demanda.

A su vez, de acuerdo con la doctrina, el acreedor hipotecario USDA-RD puede satisfacer del fondo de compensación la pérdida de su gravamen ocurrido a consecuencia de la expropiación. La certificación registral del inmueble expropiado acredita la existencia del gravamen y el monto de la cuantía, razón por la cual el TPI, además de reconocer a USDA-RD el derecho a reclamar su interés

en la propiedad, debió autorizar el desembolso a su favor de los fondos consignados.

En virtud de lo anterior, expedimos el auto de *certiorari* y revocamos la resolución recurrida. En la continuación del proceso, el Tribunal de Primera Instancia deberá ordenar el desembolso a favor de USDA-RD por la cantidad que esta acredite es el balance actualizado de cancelación de la deuda.

Precisamos, además, que toda vez que los gravámenes sobre una propiedad expropiada quedan cancelados, la acción judicial ordinaria que presente USDA-RD contra los deudores hipotecarios, si alguna, procederá si los fondos consignados resultaren insuficientes para satisfacer la totalidad del crédito.

**IV.**

Por los fundamentos que anteceden, expedimos el auto de *certiorari* y revocamos la resolución recurrida. Se declara con lugar la *Moción en Solicitud de Retiro de Fondos* a favor del USDA-RD. Previo al desembolso, USDA-RD someterá al Tribunal de Primera Instancia un balance de cancelación actualizado sobre la deuda. La cantidad a desembolsarse por el Tribunal nunca será mayor a la consignada en el presente caso.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones